AMERICAN SURETY CO. OF NEW YORK et al. v. BOARD OF TRUSTEES OF INDEPENDENT SCHOOL DIST. OF FT. WORTH (two cases). (Nos. 9056, 9057.)

(Court of Civil Appeals of Texas. Ft. Worth. March 22, 1919. Writs of Error Denied by Supreme Court Nov. 26 and Dec. 10, 1919.)

1. Schools and school districts ⟨⟩17—Penalty moneys on school taxes became part of school fund.

Under Ft. Worth Charter, c. 15, § 13, which took effect in 1909, and Charter of 1907, c. 10, § 156, penalty moneys collected on school taxes by the city of Ft. Worth became when collected a part of the school fund, and belonged to the board of trustees of the independent school district of Ft. Worth.

2. Estoppel ⟨⟩62(4) — Board of trustees of school district not estopped to sue city for penalty on taxes.

The board of trustees of independent school district of Ft. Worth were not estopped to sue the city for penalty moneys collected on school taxes in the city of Ft. Worth during the period from January 1, 1909, to November 30, 1917.

3. Limitation of actions ⟨⟩11(4)—Statute cannot be pleaded against board of trustees of school district.

A city cannot plead the two-year statute of limitations in an action by a school district against it to recover penalty moneys collected on school taxes by the city, such school officers exercising a portion of the sovereign powers of the state.

4. Municipal corporations ⟨⟩986 — City could not reimburse itself for expenses of collecting school taxes for school district.

Under Ft. Worth City Charter 1909, c. 15, § 13, and Ft. Worth City Charter 1907, c. 10, § 156, the municipal corporation of the city of Ft. Worth had no power over moneys collected for school purposes, and could not lawfully divert any part thereof to its own reimbursement for the expense of maintaining its tax machinery by means of which all taxes in the city were required to be assessed, equalized, levied, and collected.

Appeal from District Court, Tarrant County; Bruce Young, Judge.

Suits by the Board of Trustees of the Independent School District of Ft. Worth against Albert Tankersley and the American Surety Company and against J. S. Bradley and the American Surety Company. There was judgment in each case in favor of plaintiff, and defendants appeal. Affirmed.

The following findings and conclusions were filed in each of such cases:

#### Findings of Fact.

First. The court finds that the person named in plaintiff's petition as constituting the board of trustees of the independent school district of Ft. Worth do in fact constitute said board of trustees, as alleged in said petition, and were such board at the time of the institution of this suit.

"Second. The court finds that from January 1, 1919, to November 30, 1917, the city of Ft. Worth collected and received from delinquent taxpayers penalties, which accrued on account of such delinquency, in the aggregate sum of $196,742.43, of which the sum of $45,964.94 represents the penalties collected on taxes that were levied for school purposes. This is shown in detail in Exhibit 2 of the auditor's report in this case, which is hereby referred to.

Third. After calculating interest on said sum of $45,964.94 at 6 per cent. per annum in accordance with the stipulation made and filed by the parties to this suit, and after making due allowance for a certain credit and interest thereon to which the city was entitled by rea-

---

⟨⟩For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

son of the facts recited in said stipulation and in the judgment entered, the court finds that the net amount of principal and interest due at the date of the trial from the city of Ft. Worth to the board of trustees of the independent school district of Ft. Worth, on account of penalty moneys on school taxes collected during the period from January 1, 1909, to November 30, 1917, is $50,676.73.

Fourth. The court finds that of the above amount of penalties collected on school taxes the sum of $19,411.04 was collected during the period from July 7, 1915, to November 30, 1917, so that said sum, with interest thereon (less the above-mentioned credit allowed the city on account of commissions paid to the city assessor and collector out of the general fund on personal property tax collections made for the school fund) would be the only amount plaintiff herein would be entitled to recover if the city's plea of the two-year statute of limitations should be sustained. Said penalty collections on school taxes during the two years next preceding the filing of this suit are shown in Exhibit 5 to the auditor's report, which is hereby referred to.

Fifth. The court finds that the expense incurred and paid by the city of Ft. Worth during the period from January 1, 1909, to November 30, 1917, in assessing, equalizing, and collecting the taxes, including those levied for school purposes, was the sum of $134,622.65, as is shown in Exhibit 7 of the auditor's report filed in this cause, and hereby referred to. If the board of trustees should be chargeable in this suit with any part of such expense, such part for each year would be such per cent. of the total for that year as is shown in the tax distribution table appearing on the same sheet with Exhibit 5 to the auditor's report.

Sixth. The court finds that there were no expenses incurred by the city that were attributable solely to the assessment, equalization, or collection of school taxes, except the commissions above referred to for which credit has been duly given by the court.

Seventh. The court finds that every part of the report made and filed by the auditor appointed in this case by the court, which report was introduced in evidence at the trial, is true and correct.

Eighth. The court finds that every fact stated in the stipulation filed in this cause, and upon which the case was tried is true and correct.

Ninth. The court finds that section 13, of chapter 15 of the special charter of the city of Ft. Worth that is now in force (which charter took effect March 10, 1909, and is printed in the volume published by the city of Ft. Worth entitled The Charter and Revised Ordinances of the City of Ft. Worth, Texas) provides, among other things, that "all moneys and funds arising from the assessment and collection of any general or special tax in Ft. Worth for public free schools, shall be by the assessor and collector, turned over directly to the treasurer of the board of trustees of the independent school district of the city of Ft. Worth, who shall execute his receipt thereof, and the board of commissioners of the city of Ft. Worth shall have no power over said funds."

Tenth. The court finds that the special charter of the city of Ft. Worth which immediately preceded the present one was the charter of 1907, and that it contained (chapter 10, § 156) substantially the same provision as the one above quoted from the present charter.

Eleventh. The court finds that section 16 of chapter 8 of the present charter of Ft. Worth contains the following provision: "Should any taxpayer suffer his taxes to become delinquent, that is to say, shall fail or refuse to pay same before February 1st of each year, then a penalty shall attach to the payment of same, at the rate of one (1%) per cent. per month, or any fraction thereof, and in addition thereto shall also be subject to the payment of all costs and expenses that may be incurred in the advertisement of such delinquent property, and the collection of same, through the means prescribed by law."

"The court further finds that most of the penalties involved in this suit accrued by virtue of said provision; and the rest of them by virtue of a similar provision in the charter of 1907.

Twelfth. The court finds that the penalty moneys claimed by the plaintiff in this suit, and for which the court has rendered judgment in its favor, were in fact and in law incident of or accretions to the school taxes upon which they accrued; that such penalties collected on school taxes were for "moneys and funds arising from the assessment and collection" of taxes "in Ft. Worth for public free schools" within the meaning of the charter provision on that subject; that under the charter all such penalty moneys should have been turned over directly to the treasurer of the board of trustees; and that at the instance of the city, and through a mistaken view on its part as to its legal rights, such moneys were not turned over to the treasurer of the board of trustees, but were taken possession of by the city and wrongfully withheld from the board of trustees and its treasurer.

### Conclusions of Law.

[1] I. The court concludes that both under the general principles of the law and under the charter provisions referred to in the above findings of fact all penalty moneys collected on school taxes in the city of Ft. Worth became when collected a part of the school fund, and belong to the board of trustees of the independent school district of Ft. Worth.

[2] II. The court concludes that in this case the plaintiff, the said board of trustees, is not estopped to sue for and recover such penalty moneys.

[3] III. The court concludes that the statute of limitations of two years pleaded by the city is not applicable to the plaintiff under the circumstances of this case, and that no part of the plaintiff's cause of action is barred by said statute; that the independent school district of Ft. Worth is a subdivision and instrumentality of the state of Texas; that its trustees are county officers; that said district and its trustees, in the discharge of their duties for the protection and recovery of the school funds, are acting in the interest of the public and of the state, and are exercising a portion of the sovereign powers of the state of Texas, and that under such circumstances limitation cannot be successfully pleaded against them any more than it can against the state itself.

[4] IV. The court concludes that, under the law and under the charters above referred to, there is no authority to hold the board of trustees or the school funds responsible for any part of the expenses, above referred to amounting to $134,622.65, incurred by the city in assessing, equalizing, and collecting the taxes during the period from January 1, 1909, to November 30, 1917. Under the law, and especially under section 13 of chapter 15 of the charter, all moneys arising from the assessment and collection of any tax in Ft. Worth for public free schools must be turned over directly to the treasurer of the board of trustees without diminution or deduction. The municipal corporation of the city of Ft. Worth has no power over such funds, and cannot lawfully divert them, in whole or in part, to its own reimbursement for the expenses of maintaining its tax machinery by means of which all taxes in the city (for municipal purposes and for school purposes alike) are required to be assessed, equalized, levied, and collected. Hence the court has denied the plea of the city, which seeks to have the school fund charged with a portion of such expenses.

V. The court concludes that the plaintiff is legally entitled to a judgment against the city in the sum of $50,676.73, and to the writs of injunction and mandamus prayed for against defendant Albert Tankersley, as city assessor and collector of the city of Ft. Worth and ex officio assessor and collector for the board of trustees of the independent school district of Ft. Worth; and judgment has been entered accordingly.

R. S. Phillips and D. W. Odell, both of Ft. Worth, for appellants.

R. M. Rowland, of Ft. Worth, for appellees.

### Case No. 9056.

DUNKLIN, J. Findings and conclusions filed by the judge of the trial court are adopted, and the judgment is affirmed.

### Case No. 9057.

CONNER, C. J. Judgment affirmed upon the trial court's conclusions of fact and law, which are adopted.